UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUBEN RIVAS FLORES,

           Plaintiff,

    v.

JASON GONZALEZ, et al.,

           Defendants.

No.  1:24-cv-00229-KES-CDB

TENTATIVE PRETRIAL ORDER

Deadlines:

Motions in Limine Filing: **May 12, 2026**
Oppositions: **May 26, 2026**

Proposed Jury Instructions/
Verdict Form: **May 19, 2026**
Objections: **May 26, 2026**

Proposed Voir Dire: **June 8, 2026**

Trial Briefs: **June 8, 2026**

Trial Confirmation Hearing: **June 8, 2026, at 3:00 p.m. in Courtroom 6**

Jury Trial: **June 16, 2026, at 8:30 a.m. in Courtroom 6**

Estimated Trial Time: **3–4 days**

1

On January 12, 2026, the Court conducted a final pretrial conference.  Stephen A. King appeared as counsel for plaintiff; Michael Marderosian and Heather Cohen appeared as counsel for defendants.  Having considered the parties' pretrial statement and views, the Court issues this tentative pretrial order.

This action is set for trial on plaintiff Ruben Rivas Flores' claim under 42 U.S.C. § 1983 for unreasonable seizure and excessive force in violation of the Fourth Amendment.

I.      JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because all claims arose in Bakersfield, California, within the venue of this federal district.  Jurisdiction and venue are not contested.

II.     JURY

The parties have requested a jury trial.  The jury will consist of eight jurors.

III.    UNDISPUTED FACTS

1.      The events giving rise to this litigation occurred on or about November 26, 2022 in the County of Kern.

2.      At the time of this incident, Defendants Jason Gonzalez, Kayla Wainwright, Chase Hammons, and Jeffrey Martin were acting under the color of law and were in the scope of their employment as Officers with the City of Bakersfield.

IV.     DISPUTED FACTUAL ISSUES

1.      Plaintiff identifies the following facts in controversy:

a.      Whether Plaintiff was lawfully seized and detained by Defendant Officers on November 26, 2022.

b.      Whether Plaintiff posed any immediate threat to the safety of Defendant Officers or others at the scene.

c.      Whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight.

d.      Whether Defendant Officers used excessive and unreasonable force against Plaintiff in violation of the Fourth Amendment, including but not limited

2

to:

- Tackling Plaintiff to the ground without justification;

- Striking Plaintiff with batons while he was on the ground and subdued;

- Continuing to use force after Plaintiff was handcuffed and no longer posed any threat;

- Kneeling on Plaintiff's neck and back while he was restrained.

e. Whether Plaintiff identified himself as an Uber driver attempting to pick up a passenger and posed no threat to officers.

f. Whether Plaintiff was attempting to defend himself from an attack by Casey Deandre Young Jr., who Plaintiff did not know.

g. Whether Defendant Officers failed to investigate the situation or provide Plaintiff an opportunity to explain before using force.

h. Whether Defendant Officers ignored Plaintiff's pleas for help and his statements that he was an Uber driver.

i. Whether Defendant Officers used force in retaliation or with malicious intent rather than for any legitimate law enforcement purpose.

j. Whether the force used by Defendant Officers was objectively unreasonable under the totality of circumstances known to the officers at the time.

k. Whether Defendant Officers' actions violated Bakersfield Police Department policies and procedures regarding use of force, de-escalation, and duty to intervene.

l. Whether Defendant Officers failed to render or summon timely medical aid for Plaintiff's injuries.

m. Whether Defendant Officers falsified or misrepresented facts in their reports to justify their use of force.

n. The full nature, extent, and permanency of Plaintiff's physical injuries

3

sustained as a result of Defendant Officers' actions, including:

- Right corneal abrasion;

- Hairline fracture of right fibula;

- Contusions, lacerations, and abrasions to his body;

- Injuries to his neck, back, and extremities.

o. The nature, extent, and permanency of Plaintiff's emotional and psychological injuries, including:

- Post-traumatic stress disorder (PTSD);

- Anxiety and depression;

- Humiliation and emotional distress;

- Fear of law enforcement;

- Ongoing psychological treatment needs.

p. Whether Plaintiff has suffered and will continue to suffer economic damages including lost wages, lost earning capacity, and medical expenses.

q. The amount of general and special damages to which Plaintiff is entitled.

r. Whether Plaintiff is entitled to punitive damages based on Defendant Officers' malicious, oppressive, or reckless conduct.

s. Whether the City of Bakersfield maintained policies, customs, or practices that caused the violation of Plaintiff's constitutional rights, including:

- Failure to properly train officers on use of force and de-escalation;

- Failure to properly supervise officers;

- Ratification of unconstitutional conduct through inadequate investigation and discipline.

t. Whether the City of Bakersfield showed deliberate indifference to the constitutional rights of persons with whom its officers interact.

u. Whether Defendant Officers are entitled to qualified immunity.

2. Defendants identify the following facts in controversy:

4

a.    Whether any Defendant wrongfully seized the Plaintiff;

b.    Whether there was probable cause to seize Plaintiff;

c.    Whether each or any Defendant is liable to Plaintiff for the use of unreasonable force in violation of the Fourth Amendment;

d.    Whether any force used was reasonable and necessary;

e.    Whether the use of force was in self defense or defense of others;

f.    Whether Plaintiff suffered any injuries and/or damages as a result of conduct by any Defendant;

g.    The nature and extent of any claimed injuries;

h.    The nature and extent of any claimed damages

i.    Whether Plaintiff can recover monetary damages from any Defendant;

j.    Whether Plaintiff can recover punitive damages from any Defendant;

k.    Whether any Defendant is entitled to qualified immunity;

l.    Whether Defendants can recover fees and costs for having to defend this matter.

V.    DISPUTED EVIDENTIARY ISSUES / MOTIONS IN LIMINE

The purpose of a motion in limine is to establish in advance of the trial that certain evidence should or should not be admitted at trial.  The Court will grant a motion in limine precluding use of evidence only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  The Court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the Court prior to trial and without dependence on other evidence which will be introduced by the parties at trial.

**In advance of filing any motion in limine, the parties shall meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  The parties shall <u>exhaust</u> efforts to resolve such evidentiary disputes prior to filing a motion in limine and shall include in any such motion a certification concerning their meet and confer efforts.**

The parties anticipate filing the evidentiary objections and/or motions in limine identified

5

below.  Any motion in limine shall be filed no later than **May 12, 2026.**  The motion must clearly identify the nature of the evidence that the moving party seeks to have admitted or seeks to prohibit the other side from offering at trial.  Any opposition to a motion in limine shall be filed no later than **May 26, 2026.**  After reviewing the motions and any opposition briefs, the Court will notify the parties if a reply brief is necessary.  As such, parties shall not file any reply briefs without court approval.  The Court will also notify the parties if it will hear argument on any motions in limine prior to the first day of trial.

The joint pretrial statement identifies the following motions in limine that the parties intend to file:

1.    Plaintiff:

a.    Motion in Limine to Admit Body-Worn Camera Footage: To ensure the admission of all body-worn camera footage from the incident, including footage from Officers Carlos Rodriguez, Chase Hammons, Jason Gonzalez, Jason Perez, Jeffrey Martin, Kayla Wainwright, and Noah Morales, as relevant evidence under Federal Rules of Evidence 401, 402, and 403.

b.    Motion in Limine to Exclude Evidence of Prior Incidents at Gatsby's Nightclub: To exclude or limit evidence regarding prior unrelated incidents, crimes, or calls for service at or near Gatsby's nightclub that did not involve Plaintiff, as such evidence is irrelevant under FRE 401 and 402, and its prejudicial effect substantially outweighs any probative value under FRE 403.

c.    Motion in Limine to Admit Plaintiff's Expert Testimony: To ensure the admission of expert testimony from Roger A. Clark regarding police procedures, use of force standards, and whether Defendant Officers' conduct violated professional standards and constitutional requirements under Federal Rules of Evidence 702, 703, and Daubert standards.

d.    Motion in Limine to Exclude Speculation Regarding Plaintiff's Intent or State of Mind: To exclude speculation or argument regarding Plaintiff's

6

subjective intent, knowledge, or state of mind during the incident, where Defendants lack personal knowledge of same.

e.  Motion in Limine to Admit Evidence of Bakersfield Police Department Policies and Training: To admit evidence of BPD's use of force policies, training materials, and procedures in effect on November 26, 2022, as relevant to the reasonableness inquiry under FRE 401 and 402.

f.  Motion in Limine to Admit Medical Records and Bills: To ensure admission of Plaintiff's medical records from Kern Medical Center and subsequent treatment providers, along with associated medical bills and billing records, as business records under FRE 803(6) and as evidence of injuries and damages.

g.  Motion in Limine to Admit Evidence of Plaintiff's Emotional Distress and Psychological Injuries: To admit evidence, including lay and expert testimony, regarding Plaintiff's emotional distress, PTSD, anxiety, and other psychological injuries resulting from the incident.

h.  Motion in Limine to Exclude References to Plaintiff's Immigration Status, Criminal History, or Character: To exclude any evidence or argument regarding Plaintiff's immigration status, prior criminal history (if any), or general character, as irrelevant and prejudicial under FRE 401, 402, 403, and 404.

i.  Motion in Limine to Admit Witness Video Footage: To ensure admission of any civilian witness video footage of the incident as relevant demonstrative evidence under FRE 401, 402, and 901.

j.  Motion in Limine to Exclude or Limit "High Crime Area" or "Dangerous Location" Arguments: To exclude or limit generalized arguments about the area being a "high crime area" or "dangerous location" unless properly supported by specific, relevant evidence known to the officers at the time of the incident under FRE 401, 402, and 403.

7

2.    <u>Defendants</u>:

8

a.  Motion in Limine To Exclude Any Prior Lawsuits, Citizen Complaints, EIS Notifications,  Internal Affairs Investigations and/or Discipline of the Defendant Officers or any other Officer Witness;

b.  Motion in Limine To Preclude Plaintiff from Testifying As To Any Medical Diagnosis he Claims to Have  Received.

c.  Motion to Exclude Evidence or Argument that The Defendants Did Not Comply with Bakersfield Police Department Policies.

d.  Motion in Limine To Preclude the Introduction of Any Evidence Pertaining to Any Use of Force in Any Other Matter.

e.  Motion in Limine To Preclude Any Argument or Suggestion That Defendant Officers were Not Sufficiently Trained on the Use of Force.

f.  Motion in Limine to Preclude Any Evidence or Argument That Plaintiff was Not Criminally Charged or Convicted.

g.  Motion In Limine to Exclude Any Claim for Past, Present, or Future Medical Care or Medical Expenses.

h.  Motion in Limine to Exclude Damages Pertaining to Loss Future Earning Capacity.

i.  Motion in Limine To Exclude Opinions of Roger Clark.

j.  Motion in Limine to Exclude Evidence or Argument That Plaintiff Was Not Criminally Charged Following This Incident.

k.  Motion in Limine to Exclude Undisclosed Expert Opinions.

l.  Motion in Limine to Exclude Evidence Which Is Only Relevant To Dismissed Claims.

m.  Motion in Limine to Exclude Witnesses Who Were Not Properly Disclosed In Any Rule 26 Disclosure or in Discovery Responses.

n.  Motion in Limine to Exclude Documents Which Were Not Properly Disclosed In Any Rule 26 Disclosure or in Discovery Responses

VI.    SPECIAL FACTUAL INFORMATION

9

The claims in this case do not fall under any of the specific actions listed in Local Rule 281(b)(6).

VII.    RELIEF SOUGHT

    1.    Plaintiff seeks the following relief:

        a.    Compensatory Damages: General and special damages according to proof at trial, including but not limited to:

            i.    Economic Damages:

- Past medical expenses incurred for treatment of injuries sustained on November 26, 2022;
- Future medical expenses reasonably certain to be incurred;
- Past lost earning capacity;
- Future lost earning capacity;
- Other economic losses according to proof.

            ii.    Non-Economic Damages:

- Physical pain and suffering, past and future;
- Mental and emotional distress, past and future;
- Post-traumatic stress disorder (PTSD);
- Anxiety and depression;
- Humiliation, embarrassment, and indignity;
- Loss of enjoyment of life;
- Fear and ongoing psychological harm;
- Other non-economic damages according to proof.

        b.    Attorneys' Fees and Costs: Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Federal Rule of Civil Procedure 54, Local Rules 292 and 293, and all other applicable statutes and rules.

        c.    Pre-Judgment and Post-Judgment Interest: As allowed by law.

        d.    Such Other and Further Relief: As the Court deems just and proper.

Plaintiff contends that Defendants' actions were objectively unreasonable, violated clearly

10

established constitutional rights, and caused significant physical, emotional, and economic harm to Plaintiff.  Plaintiff seeks full compensation for all damages suffered as a direct and proximate result of Defendants' conduct.

      2.      <u>Defendants' Position</u>: Defendants contend that all actions taken were entirely lawful and reasonable.  Defendants seek dismissal of this case, costs, and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 1927, Federal Rule of Civil Procedure 54, Local Rules 292 and 293, and all other applicable statutes and rules.

VIII.    <u>POINTS OF LAW</u>

The claims and defenses arise under federal law.

      1.      The elements of, standards for, and burden of proof in a claim of unlawful seizure in violation of the Fourth Amendment.

      2.      The elements of, standards for, and burden of proof in a claim of excessive force in violation of the Fourth Amendment.

      3.      The elements of, standards for, and burden of proof for the affirmative defense of qualified immunity.

<u>The parties also identify the following additional points of law:</u>

      1.      <u>Plaintiff's Points of Law:</u>

          a.      42 U.S.C. § 1983 - Excessive Force Under the Fourth Amendment

To prevail on a claim for excessive force under the Fourth Amendment, Plaintiff must prove by a preponderance of the evidence that: (1) the Defendant Officers seized Plaintiff; and (2) the force used was objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97.

However, "not every push or shove, even if it may later seem unnecessary in the peace of

a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (internal quotation marks omitted). The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

Courts consider several factors in determining whether force was excessive, including:

1.  The severity of the crime at issue;

2.  Whether the suspect poses an immediate threat to the safety of the officers or others;

3.  Whether the suspect is actively resisting arrest or attempting to evade arrest by flight;

4.  The amount of time and any changing circumstances during the encounter;

5.  The type and amount of force used; and

6.  The extent of the plaintiff's injury.

*Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011); Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003).

Application to This Case:

Plaintiff will demonstrate that the force used by Defendant Officers was objectively unreasonable because:

- Plaintiff was not suspected of any serious crime;

- Plaintiff posed no immediate threat to officer safety or to others;

- Plaintiff was not actively resisting or attempting to flee;

- Officers had ample time to assess the situation and chose not to do so;

- The force used (tackling, baton strikes, neck compression, continued force after handcuffing) was excessive and disproportionate;

- Plaintiff suffered significant injuries.

Moreover, the Ninth Circuit has held that "gratuitous violence against a suspect who has been already been seized and brought under control" violates the Fourth Amendment. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003). Here, Defendant Officers continued to

12

use force even after Plaintiff was on the ground, subdued, and handcuffed.

b.    Clearly Established Law - Qualified Immunity

While Defendants will assert qualified immunity, that defense fails here because the law was clearly established that the conduct engaged in by Defendant Officers violated the Fourth Amendment.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

A right is clearly established when, at the time of the challenged conduct, "[t]he contours of [the] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted).

However, officials can "still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  A case directly on point is not required if "a general constitutional rule already identified in the decisional law" applies "with obvious clarity to the specific conduct in question." *United States v. Lanier*, 520 U.S. 259, 271 (1997).

Application to This Case:

It has long been clearly established that:

- Officers may not use gratuitous force against individuals who are secured and under control. *Drummond*, 343 F.3d at 1057;

- Officers may not continue to use force after the justification for that force has dissipated. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013);

- Beating a non-resisting suspect with a baton violates the Fourth Amendment. *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000);

- Officers may not use significant force against a person who poses no threat and is

13

not resisting. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Every reasonable officer in Defendant Officers' position would have known that using the force employed against Plaintiff under these circumstances violated the Fourth Amendment.

          c.     Damages

Economic Damages: Plaintiff is entitled to recover all economic losses proximately caused by Defendants' constitutional violations, including past and future medical expenses, lost wages, and lost earning capacity. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

Non-Economic Damages: Plaintiff is entitled to recover compensatory damages for physical and emotional suffering, mental anguish, humiliation, and other intangible harms. *Carey*, 435 U.S. at 264.

Punitive Damages: Punitive damages are available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages serve to punish egregious conduct and to deter future violations. Such damages are appropriate here given the nature of Defendant Officers' conduct.

          2.     <u>Defendants' Points of Law:</u>

               a.     42 U.S.C § 1983- Violation of the Fourth Amendment- Unreasonable Seizure

Ninth Circuit Model Jury Instruction 9.20 provides in pertinent part:

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. To prove the defendant deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

First, the defendant seized the plaintiff's person;

Second, in seizing the plaintiff, the defendant acted intentionally; and

Third, the seizure was unreasonable.

A defendant "seizes" the plaintiff's person when [he] [she] restrains the plaintiff's liberty

14

through coercion, physical force, or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, consider all of the circumstances, including:

(1)     the number of officers present;

(2)     whether weapons were displayed;

(3)     whether the encounter occurred in a public or nonpublic setting;

(4)     whether the officer's manner would imply that compliance would be compelled; and

(5)     whether the officers advised the plaintiff that [he] [she] [other pronoun] was free to leave.

Under Ninth Circuit Model Jury Instruction 9.23:

In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officer[s] had probable cause to believe the plaintiff has committed or was committing a crime.

In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested without probable cause.

"Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry.

Under state law, it is a crime to willfully resist, delay, or obstruct any public officer, peace officer.

b.     42 U.S.C § 1983- Violation of the Fourth Amendment- Excessive Force

In analyzing a claim for excessive force under the Fourth Amendment, the Ninth Circuit instructs:

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself and/or in attempting to stop a fleeing or escaping suspect. Therefore, to establish an unreasonable seizure in

this case, the plaintiff must prove by a preponderance of the evidence that the officer[s] used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances.  The jury must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.   Although the facts known to the officer are relevant to the jury's inquiry, an officer's subjective intent or motive is not relevant to the inquiry.

In determining whether the officer used excessive force in this case, a jury is to consider all of the circumstances known to the officer on the scene, including: (1) the nature of the crime or other circumstances known to the officer[s] at the time force was applied; (2) whether the plaintiff posed an immediate threat to the safety of the officer[s] or to others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;  (5) the relationship between the need for the use of force and the amount of force used; (6) the extent of the plaintiff's injury; (7) any effort made by the officer to temper or to limit the amount of force; (8) the severity of the security problem at issue;  (9) the availability of alternative methods to take the plaintiff into custody; (10) the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent; (11) whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given; and (13) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.  *See* Ninth Circuit Model Jury Instruction 9.25.

i.      Qualified Immunity

"'[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011)  (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The purpose of

16

qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). "Under qualified immunity, an officer will be protected from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* at 1866 quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id.* at 1867. In tense situations, officials are afforded "broad discretion" and "immunity even when officers make mistakes." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001).

In determining whether an officer is entitled to qualified immunity, courts consider (1) whether the officer violated a constitutional right of the plaintiff, and (2) whether that constitutional right was "clearly established in light of the specific content of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440 (citation omitted). Courts may exercise their sound discretion in deciding which of these two prongs should be addressed first. *Id.* citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Regarding the second prong, the Supreme Court has cautioned that "'clearly established law' should not be defined 'at a high level of generality'" but instead "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted). The Supreme Court has held that "[a]lthough [its] case law does not require a case directly on point

17

for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *White*, 137 S. Ct. at 551). "Use of excessive force is an area of the law' in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)); *T.D.P. v. City of Oakland*, 2019 U.S. Dist. LEXIS 29624, at *31-33 (N.D. CA Feb. 24, 2019).

ii.      Probable Cause

To prevail on a claim for unreasonable seizure under either the Fourth Amendment, a plaintiff must "demonstrate that there was no probable cause to arrest him." *Norse v. City of Santa Clara*, 629 F. 3d 966, 978 (9th Cir. 2010) quoting *Cabrera v. City of Huntington Park*, 159 F. 3d 374, 380 (9th Cir. 1998); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The Supreme Court has held, "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances...". *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) [internal quotation marks and citations omitted]; however, Courts "recognize that the standard for probable cause is not terribly demanding. It merely asks whether, under the totality of circumstances, a prudent officer would have believed there was a fair probability that [a person] committed a crime." *United States v. Collins*, 427 F. 3d 688, 691 (9th Cir. 2005) [emphasis added]; *See also Tatum v. City & Cnty of San Francisco*, 441 F. 3d 1090, 1094 (9th Cir. 2006) [Probable cause exists to arrest a suspect without a warrant "if the available facts suggest a 'fair probability' that the suspect has committed a crime."]; "Whether probable cause exists depends upon the reasonable conclusion[s] to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). "This 'is not a high bar.'" *Vanegas v. City of Pasadena*, 46 F. 4th 1159, 1164 (9th 2022) quoting *Kaley v. United States*, 571 U.S. 320, 337 (2014).

"Pursuant to California Penal Code section 847(b)(1), a police officer shall not be held civilly liable for false arrest if he or she was acting within the scope of his or her authority, and if

18

the arrest was lawful, or if the police officer had reasonable cause to believe the arrest was lawful at the time of the arrest." *Turner v. Craig*, 2010 U.S. Dist. LEXIS 3356, at *5 (N.D. CA Jan. 14, 2010)[emphasis added]. California Penal Code 847(b)(1) "is coextensive with the doctrine of probable cause . . ." *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 788 (2017) (citing *Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 846 (1990).

California Penal Code § 148(a)(1) makes it a criminal offense when a person "willfully resists delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment[.]" Cal. Penal Code § 148(a)(1).  Running and hiding from a police officer constitutes a violation of Penal Code  § 148(a)(1). *See People v. Allen*, 109 Cal. App. 3d 981, 987 (1980).

**ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED AND DEEMED WAIVED.**

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this Court no later than **June 8, 2026**, in accordance with Local Rule 285.

IX.    ABANDONED ISSUES

None identified.

X.    WITNESSES

Plaintiff's witnesses are listed in **Attachment A**.  Defendants' witnesses are listed in **Attachment B.**

1. **The Court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

    a.   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

    b.   The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph 2, below.

2. Upon the post pretrial discovery of any witness a party wishes to present at trial,

19

the party shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so the Court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

    a.   The witness could not reasonably have been discovered prior to the discovery cutoff;

    b.   The Court and opposing parties were promptly notified upon discovery of the witness;

    c.   If time permitted, the party proffered the witness for deposition; and

    d.   If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

## XI.    EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiff's exhibits are listed in **Attachment C**.  Defendants' exhibits are listed in **Attachment D.**

No exhibit shall be marked or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits.  All exhibits must be pre-marked as discussed below.  At trial, joint exhibits shall be marked for identification as JX and listed numerically, e.g., JX-1, JX-2.  To the extent the parties have any objections to jointly marked exhibits, they must make such objections by the deadline set out below.  To the extent the parties also have separate exhibits, Plaintiffs' exhibits shall be listed numerically and Defendants' exhibits shall be listed alphabetically.  All exhibits must be pre-marked.

The parties must prepare four (4) separate exhibit binders for use by the Court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.  The parties must exchange exhibits no later than **May 19, 2026.**  Any objections to exhibits shall be filed no later than **June 2, 2026.**  The final exhibits are due to the Court on **June 9, 2026.**  In making any objection, the party is to set forth the grounds for the objection.  **As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation**.

**The Court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

1. The Court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

   a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

   b. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph 2, below.

2. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

   a. The exhibits could not reasonably have been discovered earlier;

   b. The Court and the opposing parties were promptly informed of their existence; and

   c. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

XII.    DISCOVERY DOCUMENTS

1. Plaintiff has produced and/or served the following discovery documents:

Initial Disclosures:

   a. Plaintiff's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), served June 10, 2024.

Interrogatory Responses:

   b. Plaintiff's Responses to Defendant City of Bakersfield's Special Interrogatories, Set One, served September 17, 2024.

21

c.  Plaintiff's Responses to Defendant Jason Gonzalez's Special Interrogatories, Set One, served September 17, 2024.

d.  Plaintiff's Responses to Defendant Chase Hammons' Special Interrogatories, Set One, served September 17, 2024.

e.  Plaintiff's Responses to Defendant Jeffrey Martin's Special Interrogatories, Set One, served September 17, 2024.

f.  Plaintiff's Responses to Defendant Kayla Wainright's Special Interrogatories, Set One, served September 17, 2024.

Responses to Requests for Production:

g.  Plaintiff's Responses to Defendant City of Bakersfield's Requests for Production of Documents, Set One, served September 17, 2024.

h.  Plaintiff's Responses to Defendant Jason Gonzalez's Requests for Production of Documents, Set One (if propounded).

i.  Plaintiff's Responses to Defendant Chase Hammons' Requests for Production of Documents, Set One (if propounded).

j.  Plaintiff's Responses to Defendant Jeffrey Martin's Requests for Production of Documents, Set One (if propounded).

k.  Plaintiff's Responses to Defendant Kayla Wainright's Requests for Production of Documents, Set One (if propounded).

Responses to Requests for Admission:

l.  Plaintiff's Responses to Defendant City of Bakersfield's Requests for Admission, Set One, served September 17, 2024.

m.  Plaintiff's Responses to Defendant Jason Gonzalez's Requests for Admission, Set One (if propounded).

n.  Plaintiff's Responses to Defendant Chase Hammons' Requests for Admission, Set One (if propounded).

o.  Plaintiff's Responses to Defendant Jeffrey Martin's Requests for Admission, Set One (if propounded).

p.    Plaintiff's Responses to Defendant Kayla Wainright's Requests for Admission, Set One (if propounded).

Supplemental Discovery Responses:

q.    Any supplemental or amended discovery responses provided during the course of discovery.

Expert Disclosures:

r.    Plaintiff's Expert Witness Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(2), designating Roger A. Clark, served March 1, 2025.

Documents Produced:

s.    Witness video footage of the incident (if in Plaintiff's possession).

t.    Medical records and bills from Plaintiff's treatment providers (to the extent in Plaintiff's possession, custody, or control).

u.    Authorizations for release of medical records and employment records.

v.    Photographs of Plaintiff's injuries (if any in Plaintiff's possession beyond those produced by Defendants).

w.    Other documents responsive to Defendants' discovery requests.

2.    Defendants list the following discovery documents:

a.    Plaintiff's Responses to Requests for Admission

b.    Plaintiff's Responses to Requests for Production of Documents

c.    Plaintiff's Responses to Special Interrogatories propounded by Defendant City of Bakersfield

d.    Plaintiff's Responses to Special Interrogatories propounded by Defendant Gonzalez

e.    Plaintiff's Responses to Special Interrogatories propounded by Defendant Hammons

f.    Plaintiff's Responses to Special Interrogatories propounded by Defendant Martin

g.    Plaintiff's Responses to Special Interrogatories propounded by Defendant

23

Wainright

h.      Plaintiff's Rule 26 Disclosure

**NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION OF THE FINAL PRETRIAL ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."** Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

Counsel must lodge a copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **June 2, 2026.**

XIII.   FURTHER DISCOVERY OR MOTIONS

The parties do not expect to litigate any further motions, beyond motions *in limine.* Discovery is closed.

XIV.   STIPULATIONS

1.      Plaintiff is willing to enter into the following stipulations:

a.      Authenticity of Body-Worn Camera Footage: Subject to proper foundation, a stipulation to the authenticity of all body-worn camera footage from the incident on November 26, 2022, including footage from Officers Rodriguez, Gonzalez, Wainwright, Hammons, Martin, Perez, and Morales.

b.      Authenticity of BPD Reports: Subject to proper foundation, a stipulation to the authenticity of the Bakersfield Police Department General Offense Report (GO# 2022-234407) and CAD Report (COB000124-COB000165).

c.      Authenticity of Medical Records: Subject to proper foundation and compliance with the business records exception to hearsay (FRE 803(6)), a stipulation to the authenticity of medical records from Kern Medical Center dated November 26, 2022.

d.      Chain of Custody: Provided that proper authentication is established, a stipulation to chain of custody for all digital evidence, including body-worn camera footage.

24

  e. Deposition Transcript Accuracy: Subject to any noted corrections, a stipulation to the accuracy of all deposition transcripts.

  f. Undisputed Facts: As set forth in Section 3 above, the parties have stipulated to certain undisputed facts.

  g. Qualifications of Experts: Without waiving objections to the substance of his opinions or the admissibility of specific testimony, a stipulation to the qualifications of Defendants' expert Marcus Sprague to testify as an expert in law enforcement practices.

 2. Defendants' position regarding stipulations:

None at this time.  Counsel can meet and confer regarding evidentiary stipulations.

XV. AMENDMENTS/DISMISSALS

None.

XVI. SETTLEMENT

At the pretrial conference, the parties indicated that a settlement conference may be productive.  Accordingly, the parties are directed to contact the Courtroom Deputy of Magistrate Judge Christopher D. Baker, within seven days, for purposes of setting a settlement conference to take place prior to trial.

XVII. JOINT NEUTRAL STATEMENT OF THE CASE

 1. Plaintiff has proposed the following statement:

On November 26, 2022, at approximately 1:30 am, Plaintiff Ruben Flores was arrested by Defendant Officers and claims that the arrest was wrongful and conducted without probable cause. Plaintiff further claims that during the arrest, Defendant Officers used excessive and unreasonable force against him. As a result of this Plaintiff alleges that he sustained injuries and damages for which he seeks full compensation. The Defendants deny Plaintiff's allegations and claims for damages.

 2. Defendants have proposed the following statement:

On November 26, 2022 at approximately 1:30 am, police officers were attempting to break up a fight involving Plaintiff Ruben Flores and another individual.  The Plaintiff claims that

the Defendant Officers wrongfully arrested him and that he was subjected to unreasonable force. The Plaintiff is seeking money damages. The Defendants deny Plaintiff's allegations and claims for damages.

The parties may file no later than **June 9, 2026,** a joint proposed Neutral Statement to be read to the jury. Otherwise, the Court may propose the following Neutral Statement:

> On November 26, 2022, at approximately 1:30 a.m., plaintiff Ruben Flores had an encounter with police officers. Mr. Flores claims that he was wrongfully arrested without probable cause and was subjected to excessive and unreasonable force, resulting in injuries and damages for which he seeks compensation. Defendants deny these claims and deny that Mr. Flores is entitled to any damages.

XVIII. SEPARATE TRIAL OF ISSUES

Plaintiff does not oppose bifurcation on the issue of punitive damages, if the jury finds in favor of Plaintiff on liability and compensatory damages. Defendants request that the trial be bifurcated, with the issue of punitive damages being tried separately, if necessary, following the resolution of the liability phase.

There will be no separate trial of issues in this action, except that the Court will bifurcate the trial with respect to the amount of punitive damages, if necessary. Should a jury find punitive liability in the first phase of the trial, the trial will proceed to a second phase which will consist of any evidence and argument with respect to the appropriate amount of punitive damages. The parties may not present evidence regarding the amount of punitive damages until the second phase of the trial.

XIX.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

The parties do not believe a court appointed expert is necessary. The Court will not independently appoint an expert witness in this case.

XX.   ATTORNEYS' FEES

1. Plaintiff's Position: Plaintiff seeks recovery of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, which provides for an award of attorneys' fees to the prevailing party in civil rights actions. If Plaintiff prevails on his § 1983 claim, Plaintiff will file a motion for attorneys' fees in accordance with Federal Rule of

26

Civil Procedure 54(d)(2) and Local Rules 292 and 293, supported by appropriate documentation including:

- Itemized time records showing hours expended and tasks performed;
- Declarations regarding the attorneys' hourly rates and qualifications;
- Evidence of the reasonable market rate for similar services in this district;
- Analysis of the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

Plaintiff will seek reimbursement of all reasonable costs incurred in prosecuting this action, including but not limited to:

- Filing fees;
- Deposition costs;
- Expert witness fees;
- Service of process fees;
- Copy costs;
- Other reasonable and necessary litigation expenses.

2. Defendants' Position: Defendants seek recover of costs and attorneys' fees under 42 U.S.C § 1988 and 42 U.S.C § 1927, Federal Rule of Civil Procedure 54, Local Rules 292 and 293, and all other applicable statutes and rules. In addition, Defendants will seek to recover cost of proof sanctions pursuant to Fed. R. Civ. P 37(c)(2).

XXI. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

The parties do not anticipate any issue with respect to the special handling of trial exhibits. The parties do not seek a protective order.

Pursuant to the Court's policy, at the end of the trial the Court will return all exhibits to the proffering party to be retained during the pendency of any appeals.

XXII. MISCELLANEOUS

None.

XXIII. <u>ESTIMATED TIME OF TRIAL/TRIAL DATE</u>

Jury trial is set for **June 16, 2026, at 8:30 a.m. in Courtroom 6** before the undersigned. Trial is anticipated to last 3–4 days. A trial confirmation hearing is set for **June 8, 2026, at 3:00 p.m. in Courtroom 6.**

XXIV. <u>PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS</u>

1. Proposed Jury Voir Dire

The parties shall file any proposed jury voir dire no later than **June 8, 2026.** Each side will be limited to 20 minutes of jury voir dire, unless they show good cause for additional time.

2. Proposed Jury Instructions and Proposed Verdict Form

a. The Court directs the parties to meet and confer to generate a joint set of jury instructions and a joint verdict form. The parties shall file no later than **May 19, 2026,** any such joint set of instructions, identified as "Joint Proposed Jury Instructions," and any agreed upon verdict form, identified as a "Joint Proposed Verdict Form." If the parties cannot agree upon certain specific jury instructions and/or the verdict form, they shall file such specific proposed disputed jury instructions and a proposed verdict form as provided in Local Rule 163 no later than **May 19, 2026.**

b. The parties shall indicate on any proposed jury instructions or proposed verdict form the party submitting the proposed instructions or verdict form (i.e., Joint, Plaintiffs', or Defendants').

c. The parties shall also include on all proposed jury instructions the following:

   i. The number of the proposed instruction in sequence.

   ii. A brief title for the instruction describing the subject matter.

   iii. The complete text of the instruction.

   iv. The legal authority supporting the instruction.

   v. The parties shall, by italics or underlining, designate any modification from statutory or case authority, or any pattern or form

28

instruction, or any other source of pattern instructions.

vi.    The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

vii.    All blanks in form instructions should be completed and all brackets removed.

d.  Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by the model instructions, including for all standard instructions.  State model jury instructions, such as BAJI or CACI instructions, shall be used where applicable as to state law claims.  The parties shall designate, by italics or underlining, any proposed modification of instructions from any pattern instruction, such as the Ninth Circuit Model Civil Jury Instructions or other pattern instructions, or from statutory or case authority.  The parties must specifically state the modification made to the standard instruction and the legal authority supporting the proposed modification.  All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative instructions will not be given and must not be submitted.

e.  The parties shall e-mail two copies of their proposed jury instructions in Microsoft Word to vgonzales@caed.uscourts.gov no later than **May 19, 2026.**  One set shall indicate the party proposing the instruction, with each instruction numbered, and shall cite supporting authority.  The other set shall be an exact copy of the first set but shall be a "clean" copy that does not contain the identification of the offering party, the instruction number, supporting authority, or any reference to the Court's disposition of the proposed instruction.

f.  The parties shall also provide a copy of their proposed verdict form(s) in

29

Microsoft Word to vgonzales@caed.uscourts.gov no later than **May 19, 2026.**

3.   Objections to Proposed Jury Instructions and/or Verdict Form(s)

The parties must file any objections to proposed jury instructions and/or proposed verdict form(s) no later than **May 26, 2026.** Each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV.   TRIAL BRIEFS

Trial briefs are due no later than **June 8, 2026**. Trial briefs shall contain the information required by Local Rule 285.

XXVI. USE OF ELECTRONIC EQUIPMENT IN COURTROOM

Any party wishing to receive an overview or tutorial of the Court's electronic equipment must contact the Courtroom Deputy Victoria Gonzales at (559) 499-5676 or vgonzales@caed.uscourts.gov at least three (3) weeks before the start of trial to schedule a tutorial session at a time convenient to the Court's information technology staff. The parties shall coordinate so all who are interested may attend the IT conference as the Court will hold only one conference per case. The parties and counsel shall confer and advise the courtroom deputy of the date and time that has been agreed upon. Counsel will not be provided any training on the day of or during the trial. The electronic equipment and resources available for this trial may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time. It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this trial prior to the commencement of trial. If any party is unfamiliar with the equipment and resources available for use in this trial, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs, or expenses associated with any delay.

XXVII.  OBJECTIONS TO PRETRIAL ORDER

The parties may file objections, if any, to this Tentative Pretrial Order within **14 days of the entry of this order**. The parties may file a response to the other parties' objections within **7 days after** the filing of the objections.  If no objections are filed, this order will become final without further order of the Court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this Court, this order shall control the subsequent course of this action and shall be modified "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).

XXVIII. COMPLIANCE WITH PRETRIAL ORDER

Strict compliance with this pretrial order and its requirements is mandatory.  The Court will enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to comply fully with this order and its requirements.  The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Failure to do so will make the parties and/or counsel subject to sanctions.

IT IS SO ORDERED.

Dated:    January 13, 2026

_____
UNITED STATES DISTRICT JUDGE

31

**ATTACHMENT A: Plaintiff's Witnesses**

1.    Ruben Rivas Flores

2.    Casey Deandre Young Jr.

3.    Carlos Velasquez

4.    Michael Figueroa

5.    Bakersfield Police Officer Jason Gonzalez

6.    Bakersfield Police Officer Kayla Wainright

7.    Bakersfield Police Officer Chase Hammons

8.    Bakersfield Police Sergeant Jeffrey Martin

9.    Bakersfield Police Officer Carlos Rodriguez

10.    Bakersfield Police Officer Jason Perez

11.    Bakersfield Police Officer Noah Morales

12.    Treating Medical Providers from Kern Medical Center

13.    Subsequent Treating Physicians and Mental Health Providers

14.    Roger A. Clark (Expert Witness)

**ATTACHMENT B: Defendant's Witnesses**

1.  Bakersfield Police Officer Jason Gonzalez

2.  Bakersfield Police Officer Kayla Wainright

3.  Bakersfield Police Officer Chase Hammons

4.  Bakersfield Police Officer Jeffrey Martin

5.  Bakersfield Police Officer Carlos Rodriguez

6.  Bakersfield Police Officer Jason Perez

7.  Bakersfield Police Officer Noah Morales

8.  Plaintiff Ruben Rivas Flores

9.  Casey Deandre Young Jr.

10.  Carlos Velasquez

11.  Marcus Sprague (Expert Witness)

12.  Victor Rocha

**ATTACHMENT C: Plaintiffs' Exhibits[1]**

1.  Bakersfield Police Department General Offense Report, GO# 2022-234407, dated November 26, 2022.

2.  Bakersfield Police Department CAD (Computer Aided Dispatch) Report, COB000124-COB000165.

3.  Bakersfield Police Department Arrest Report for Ruben Rivas Flores, dated November 26, 2022.

4.  Any and all supplemental police reports related to the incident of November 26, 2022.

5.  Officer Carlos Rodriguez Body-Worn Camera Footage (all videos).

6.  Officer Chase Hammons Body-Worn Camera Footage (all videos).

7.  Officer Jason Gonzalez Body-Worn Camera Footage (all videos).

8.  Officer Jason Perez Body-Worn Camera Footage (all videos).

9.  Sergeant Jeffrey Martin Body-Worn Camera Footage (all videos).

10. Officer Kayla Wainwright Body-Worn Camera Footage (all videos).

11. Officer Noah Morales Body-Worn Camera Footage (all videos).

12. Photographs of Plaintiff's injuries taken at or near the time of the incident.

13. Photographs of the scene, including the location of the incident (COB000002-COB000013 and any additional photographs).

14. Any witness-recorded video or photographic evidence of the incident.

15. Screenshots or still images from body-worn camera footage showing Plaintiff's injuries and the officers' actions.

16. Kern Medical Center Emergency Department Records for Ruben Rivas Flores, dated November 26, 2022, including:

---

[1] Plaintiff's exhibits as listed in Attachment C are not all separately identified as required. (For example, the supplemental police reports referenced above at "4" should be listed as separate exhibits for trial, with separate exhibit numbers). In marking exhibits for trial, plaintiff shall identify each exhibit separately and shall include a reasonable description on their exhibit list (e.g., date, Bates-stamp number, description, and/or page length) as to the identified exhibit.

- Discharge instructions and diagnoses

- Emergency department treatment notes

- Diagnostic imaging reports (X-rays, etc.)

- All related medical documentation

17. Medical bills and billing records from Kern Medical Center for treatment on November 26, 2022.

18. Records from any subsequent medical treatment providers who treated Plaintiff for injuries related to the November 26, 2022 incident, including physicians, specialists, physical therapists, and other healthcare providers.

19. Medical bills and billing records from all subsequent treatment providers.

20. Records and bills from psychological or psychiatric treatment providers, including Dr. Alex Avila and/or Premier Forensic Psychology.

21. Prescription records and pharmacy bills related to treatment of injuries from the incident.

22. Lien documentation from California Department of Health Care Services (DHCS/Medi-Cal).

23. Deposition Transcript of Ruben Rivas Flores, taken January 27, 2025.

24. Deposition Transcript of Officer Jason Gonzalez, taken February 20, 2025.

25. Deposition Transcript of Officer Kayla Wainwright, taken February 20, 2025.

26. Deposition Transcript of Officer Chase Hammons, taken February 21, 2025.

27. Deposition Transcript of Sergeant Jeffrey Martin, taken February 21, 2025.

28. Deposition Transcript of Marcus Sprague (Defendants' expert), if taken.

29. Any additional deposition transcripts deemed relevant and admissible.

30. Expert Report of Roger A. Clark, dated March 1, 2025.

31. Curriculum Vitae (Resume) of Roger A. Clark.

32. List of Prior Expert Testimony by Roger A. Clark.

33. Fee Schedule and Billing Records for Roger A. Clark.

34. Any supplemental reports or materials prepared by Roger A. Clark.

35. Materials reviewed and relied upon by Roger A. Clark in forming his opinions.

36. Bakersfield Police Department Use of Force Policy in effect on November 26, 2022.

37. Bakersfield Police Department Policy on Duty to Intervene in effect on November 26, 2022.

38. Bakersfield Police Department Policy on De-escalation in effect on November 26, 2022.

39. Bakersfield Police Department Policy on Rendering Medical Aid in effect on November 26, 2022.

40. Bakersfield Police Department Training Materials on Use of Force.

41. Bakersfield Police Department Training Records for Defendant Officers regarding use of force, de-escalation, and related topics.

42. Bakersfield Police Department Policy Manual (relevant sections).

43. Defendants' Responses to Plaintiff's Requests for Admission, Set One.

44. Defendants' Responses to Plaintiff's Requests for Production of Documents, Set One.

45. Defendants' Responses to Plaintiff's Special Interrogatories, Set One.

46. Any supplemental discovery responses provided by Defendants.

47. Complaint for Damages filed in Kern County Superior Court, January 5, 2024.

48. Notice of Removal to Federal Court, filed February 22, 2024.

49. Court's Order Granting in Part Defendants' Motion to Dismiss, filed March 29, 2024.

50. Court's Scheduling Order, filed May 20, 2024.

51. Timeline of events on November 26, 2022 (to be prepared).

52. Diagram or map of the incident location.

53. Enlargements or annotated versions of key photographs or video frames.

54. Charts or summaries of medical treatment and expenses (subject to Court approval).

55. Other demonstrative exhibits to be exchanged in accordance with Court deadlines and rules.

56. Any admissions deemed admitted by operation of Federal Rule of Civil Procedure 36.

57. Any stipulations entered into by the parties.

58. Any other documents, records, or tangible items identified during discovery and properly disclosed that become relevant at trial.

**ATTACHMENT D: Defendants' Exhibits[2]**

A.    Photographs (COB000002-COB000013)

B.    BPD CAD Report (COB000124- COB000165)

C.    Carlos Rodriguez Body Cam Videos (3 videos)

D.    Chase Hammons (1 video)

E.    Jason Gonzalez (2 videos)

F.    Jason Perez (3 videos)

G.    Jeffrey Martin (2 videos)

H.    Kayla Wainwright (2 videos)

I.    Noah Morales (1 video)

J.    Google Aerial Images

K.    Video Surveillance Footage of Plaintiff Ruben Flores on January 9, 2026.

---

[2] Defendants' exhibits as listed in Attachment D are not all separately identified as required. (For example, the Rodriguez videos referenced above at "C" should be listed as separate exhibits for trial, with separate exhibit numbers).  In marking exhibits for trial, Defendants shall identify each exhibit separately and shall include a reasonable description on their exhibit list (e.g., date, Bates-stamp number, description, and/or page length) as to the identified exhibit.